UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FAST GEAR DISTRIBUTING, INC.,

     Plaintiff,

vs.                                                                              Case No. 14-14487

LEON RODRIGUEZ, DIRECTOR,                          HON. AVERN COHN
U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

     Defendant.

_____/

**MEMORANDUM AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 11)**
**AND**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 10)**
**AND**
**DISMISSING CASE**

I.  Introduction

     This is a case arising out of the denial of a petition to permit a non-immigrant to

work in the United States.  Plaintiff Fast Gear Distribution, Inc. (Fast Gear) seeks

judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 702, of the

defendant, Leon Rodriguez, as Director of the United States Citizenship and

Immigration Service's (USCIS) denial of Fast Gear's Form I-129, Petition for

Non-immigrant Worker.  Fast Gear filed the petition on behalf of Baoping Li (Li), a

Chinese citizen.  Specifically, Fast Gear sought to employ, as a "Project Engineer" at its

facility in the United States.  This requires a showing that Li will be engaged in a

"speciality occupation" and therefore entitled to an H1-B visa.  As will be explained, the

petition was denied because Fast Gear did not meet its burden of showing that the

position offered for Li qualifies as a "specialty occupation" and because USCIS could

not determine whether Fast Gear would be in compliance with the terms and conditions

of the Labor Condition Application (LCA) certified by the Department of Labor.

Before the Court are the parties' cross motions for summary judgment.  For the

reasons that follow, USCIS's will be granted and Fast Gear's motion will be denied.

## II.  Background

Fast Gear is an automotive part import/export business established in 2001.  It

has three employees in the United States.  CAR at 81,86.[1]  On April 1, 2014, Fast Gear

filed a Form I-129 petition at USCIS's California Service Center.  Fast Gear sought a

non-immigration visa for Li, a non-citizen working in a specialty occupation, known as

an H1-B visa under 8 U.S.C. § 1101(a) (15) (H) (I) (b).  See CAR at 81-93  Fast Gear

said it will employ Li as a full-time "project engineer" at an annual wage of $60,050, for

the three-year period 10/1/2014 to 9/3/2017.  CAR at 85-86.  The petition identifies Fast

Gear's business location as 45247 Oak Forest Drive, Northville, Michigan, and states

that Li will "not be assigned to work at an off-site location for all or part of the period for

which H-1B classification is sought."  CAR at 81-93.

Fast Gear also submitted a Form ETA 9035, Labor Condition Application for

Nonimmigrant Workers (LCA), under the title "Engineers, all other."  CAR at 94-99.  The

"place of employment" identified on that form is 45247 Oak Forest Drive, Northville,

Michigan.  CAR at 97.

In addition, Fast Gear submitted a letter of support dated March 15, 2014 and

signed by its president, in which he described the company as a wholly-owned

---

[1]Citations to the Certified Administrative Record (CAR) will be "CAR at ___."

2

subsidiary of a parent company which has long-term business relationships, with
increased sales volume with United States customers.  The letter also stated that Fast
Gear was established in 2001 in the United States to "guarantee timely delivery" of the
parent company's products to its U.S. customers.  CAR at 100.  The letter further stated
that Fast Gear's business "requires us to transfer a Project Engineer to the US to
provide customer service, quality control, and technical support."  The letter described
the primary responsibilities of this position as follows:

> (1)      Design and develop quality assurance programs and inspection
> procedures according to the government and industry standards using principles
> of mechanical engineering (approximately 20% of daily work time);
> (2)      Analyze mechanical elements of the product materials to ensure full
> compliance with the quality requirements (approximately 15% of daily work time);
> (3)      Involve in product inspection process and recommend new design to
> improve product quality (approximately 15% of daily work time)
> (4)      Interact with our US customers to identify their requirements,
> specifications and concerns in order to recommend new designs based on the
> information gathered from the customers ( approximately 15% of daily work
> time);
> (5)      Research new technology and new materials for the purpose of promoting
> "Green Products" in our future design and productions( approximately 15% of
> work time);
> (6)      Play a leading role in our efforts to receive certification from ISO for all of
> the products ( approximately 10% of work time);
> (7)      Coordinate with production department and management teams in China
> (approximately 10% of work time).

CAR at 101.

On July 3, 2014, USCIS issued a Request for Evidence (RFE) seeking additional
evidence to support that the offered job qualifies as a specialty occupation.  CAR at
54-58.  In the area of "job description," the RFE specifically requested:

> a more detailed description of the work to be performed by the beneficiary for the
> entire requested period of validity, Include specific job duties, the percentage of
> time to be spent on each duty, level of responsibility, hours per week of work,
> and the minimum education, training, and experience necessary to do the job.
> Also, explain why the work to be performed requires the services of a person

who has a college degree or its equivalent in the occupational field.

CAR at 55.

Fast Gear responded in a letter dated July 25, 2014.  CAR at 59.  The response

included another letter from Fast Gear's president which states that Fast Gear was

established in the United States by its parent company in 2001 "to guarantee the

product quality."  The letter explained that while typically, Fast Gear "hired engineers in

the local market," but that it's - increased volume of business required it "to hire an

engineer who is familiar with our products manufactured in China."  CAR at 60.  The

letter also stated that "the company's business is unique and distinctive because we

provide technical support and services to our parent company in China.  As a result, we

have to hire a Project Engineer who must not only possess at least a BS degree in

Mechanical Engineering but also substantial experience with the products and

manufacturing procedures of our Parent Company."  CAR at 60-61.

The letter also enlarged the description of the duties in its initial letter of support

as follows:

> (1)     Design and develop quality assurance programs and inspection
> procedures according to the government and industry standards using principles
> of mechanical engineering with concentration on our customers' requirements in
> order to endure that the quality of our products meet or exceed both government,
> industry standards using principles of mechanical engineering with concentration
> on our customers' requirements in order to ensure that the quality of our products
> meet or exceed both government, industry and customers' standards (
> approximately 20% of daily work time);
> (2)     Analyze mechanical elements of the product materials to ensure full
> compliance with the quality requirements in all aspects such as NVH ( Noise,
> Vibration and Harshness), durability, fatigueless, crashworthy, etc.
> (approximately 15% of daily work time);
> (3)     Involve in [sic] product inspection process and recommend new design to
> improve product quality; identify and verify root cause and escape points, trouble
> shoot all product and provide appropriate solutions ( approximately 15% of daily
> work time);

4

> (4)      Interact with our US customers to identify their requirements, specifications and concerns in order to recommend new design based on the information gathered from the customers; Communicate with design and manufacturing engineers in China about technical requirements, product improvement, design changes and quality control ( approximately 15% of daily work time);
>
> (5)      Research new technology and new materials for the purpose of promoting "Green Products" in our future design and productions; Participate in research activities on advanced algorithms and engineering optimization, help formulate optimization strategy( approximately 15% of work time);
>
> (6)      Play a leading role in our efforts to receive certification from ISO for all the products (approximately 10% of work time) ;
>
> (7)      Coordinate with production department and management teams in China (approximately 10% of the time.)

CAR at 61-62.

The letter also stated that Fast Gear's parent company "has hired hundreds, perhaps thousands, of Project Engineers.  I can assure you that everyone for such position possesses at least a BS in Mechanical Engineering degree" and " Frankly I have never heard any company in the world which would hire an engineer without at least a BS degree"  CAR at 61.  Fast Gear also included with the letter a copy of the parent company's on-line job advertisement for a Project/ Mechanical Engineer, which states as follows:

> Major responsibilities includes: Interact with out US customers to identify their requirements, specifications and concerns in order to recommend new design based on the information gathered from the customers; Communicate with design and manufacturing engineers in China about technical requirements, product improvement, design changes and quality control; Design and develop quality assurance programs and inspection procedures.
>
> Require: Minimum BS with 2-5 years' experience in the area of auto transmission, Bilingual English and Chinese preferred.

CAR at 63.  Fast Gear also included a copy of the parent company's brochure.

On August 12, 2014, USCIS issued a second RFE seeking further supporting information and documentation for the requested H-1B specialty occupation visa.  CAR

at 25-27.  USCIS noted that the identified location where the beneficiary would perform the duties, 45247 Oak Forest Drive, appeared to be a single residential building and that additional evidence was necessary to establish that the work location could support the duties plaintiff asserted would be performed by the beneficiary.  USCIS also suggested that Fast Gear provide, among other things, "evidence of sufficient production space and equipment to support the beneficiary's specialty occupation work." CAR at 26-27.

Fast Gear responded to the second RFE in a letter dated September 19, 2014, explaining, in part, that its

> "facilities [sic] the manufacturing of specific parts and components for US customers.  This requires that Fast Gear employ individuals capable of identify [sic] quality parts and components for particular customers and special uses by using the latest engineering technology to analyze and test the parts and components for soundness and compatibility for particular uses before importing and distributing the product or component."

CAR at 28.  Fast Gear also included with the letter a copy of the employment agreement between Fast Gear and Li, at CAR at 29-31; income tax returns for Fast Gear, for 2011-2013, CAR at 32-43; distribution documents, CAR at 44-47; and a warranty deed showing ownership of the Northville work location, CAR at 48.

On October 6, 2014, USCIS denied Fast Gear's Form I-129 Petition for Nonimmigrant Worker.  CAR at 2-8.  USCIS concluded that that because Fast Gear's submissions did not include descriptions of the specific day-to-day duties of the offered position in relation to Fast Gear's automotive and truck parts distribution business, Fast Gear did not establish that the offered position was a specialty occupation within the meaning of the relevant statute and regulations. CAR at 5-7.  USCIS also found that the information provided regarding duties of the offered position was insufficient to allow USCIS to verify that Fast Gear would be in compliance with the terms and conditions of

the LCA submitted with the I-129 Petition.

### III.  Legal Standards

#### A.  Summary Judgment

Summary judgment is proper " if the pleadings, deposition, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323,106 S. Ct.2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the pleadings to defeat the summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,248-49 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A mere "scintilla" of evidence will be insufficient to support plaintiff's position; there must be evidence on which the jury could reasonably find for plaintiff.  Id. At 252, 106 S.Ct. 2505.

#### B.  Review under the Administrative Procedures Act

Under the APA, district court's review is limited to a determination of whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); Simms v. National Highway Traffic Safety Admin., 45 F. 3d 999, 1003 (6th Cir. 1995).  Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency even if the court might otherwise disagree with the agency's decision. Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 376, 109 S. Ct. 1851, 104

7

L.Ed.2d 377 (1989); Simms, 45 F.3d at 1003.

A determination of whether an agency's action was arbitrary, capricious or an abuse of discretion must be made on the basis of the administrative record.  Tongatapu Woodcraft Hawaii Ltd. v. Feldman, 736 F. 2d 1305, 1308 (9th Cir. 1984).  Agency action may be reversed only if the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem or offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of the agency expertise.  Marsh, 490 U.S. at 378, 109 S.Ct. 1851; Simms, 45 F.3d at 1003.

An agency's factual findings are reviewed under the substantial evidence standard.  Steeltech Ltd. V. U.S. Environmental Protection Agency, 273 F. 3d 652,656-57 (6th Cir. 2001).  Under the substantial evidence in the record as a whole, not whether there was substantial evidence standard to mean that a particular agency finding can be reversed only if a reasonable fact-finder would be compelled to reach a different conclusion.  Smith v. Chater, 99 F. 3d 780, 782 n. 3 (6th Cir. 1996) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481(1992)).

IV.  Applicable Law and Regulations

A.  In General

An employer may file an H-1B visa petition on behalf of a non-immigrant worker, known as a Form I-129 petition.  See 8 U.S.C. §1184(C).  An H-1B visa permits an non-immigrant temporary admission into the United States to

> perform services… in specialty occupation described in section 1184(i)(1) of this title… who meets the requirements for the occupation specified in section 1184(i)(2) of this title … and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has

8

filed with the secretary an application under section 1182(n)(1) of this title.
<u>See</u> 8 U.S.C. § 1101(a) (15)(H)(i)(b).

In order to qualify for an H-1B visa, the petitioning employer and the non-immigrant or alien beneficiary must satisfy a two-prong test: "(1) the position that the alien seeks to occupy must qualify as a "specialty occupation"; and (2) the alien must herself be qualified to perform services in said occupation." <u>Shanti, Inc. v. Reno</u>, 36 F. Supp. 2d 1151,1153 (D. Minn. 1999). The employer and the non-immigrant have the burden of proof in an administrative proceeding to prove that both prongs of the test are satisfied. <u>See</u> 8 U.S.C. § 1361 (" Whenever any person makes application for a visa… the burden of proof shall be upon such person to establish that he is eligible to receive a visa" ).

### B.  Specialty Occupation

At issue here is whether Fast Gear can employ Li because he is engaged in a "specialty occupation" which is described as requiring:

> (A)     Theoretical and practical application of a body of highly specialized knowledge, and

> (B)Attainment of a bachelor's or higher degree in the specific specialty(or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1). Additionally, 8 U.S.C. § 1184(i)(2) mandates that a non-immigrant petitioning for employment in a "specialty occupation" must satisfy one of the following requirements:

> (A)Full state licensure to practice in the occupation, if such licensure is required to practice in the occupation,
> (B)Completion of the degree described in paragraph (1)(B) for the occupation, or
> (C) (i) experience in the specialty equivalent to the completion of such degree, and (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

Further, the Code of Federal Regulations describe a "specialty occupation" and

provides a non-exhaustive list of professions that qualify as "specialty occupations" as

follows:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

Because this list is non-exhaustive, USCIS developed a set of criteria to

determine whether an occupation qualifies as a "specialty occupation."  The four criteria,

one of which a particular position must satisfy, are set forth in 8 C.F.R. §

214.2(h)(4)(iii)(A):

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative; an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

> (3) The employer normally requires a degree or its equivalent for the position; or

> (4) The natures of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associates with the attainment of a baccalaureate or higher degree.

V.  Analysis

A.  Whether the Offered Job is a Specialty Occupation

1.

The parties agree that Li is qualified to perform services in a "specialty

10

occupation" because he holds "a foreign degree determined to be equivalent to a United States baccalaureate or higher-degree required by the specialty occupation from an accredited college or university." 8 U.S.C. § 214.2(h)(4)(iii)(c)(2).  Therefore, the issue is not whether Li qualifies as a member of a "specialty occupation," but whether Fast Gear's proffered position of "project engineer" qualifies as a "specialty occupation" under the applicable rules and regulations set forth above.

2.

Fast Gear says that because 8 C.F.R. § 214.2 (h)(4)(iii) identifies "engineering" as an example of a specialty occupation, the position of "project engineer" must be deemed a specialty occupation.  Not so.  When making a decision as to an H1-B visa, USCIS relies on more than then just the "project engineer" job title.  See EG Enterprises, Inc. v. Dep't of Homeland Security, 467 F. Supp. 2d 728, 736 (E.D. Mich 2006).  USCIS considers the job duties of the offered position along with the petitioning employer's business operations to make a determination if the position actually requires skills of someone with a bachelor's degree in engineering.  See id.; All Aboard Worldwide Couriers, Inc. v. Attorney General, 8 F. Supp. 2d 379,381 (S.D.N.Y. 1998). Further, Fast Gear cannot simply state that it will employ an individual to perform duties that are characteristic of an engineer in order to obtain a visa.  Rather, Fast Gear must show that it is making a reasonable offer of employment that is consistent with its business needs.  See Defensor v. Meissner, 201 F.3d 384 (5th Cir. 2000).  It must also show that the offered position meets the definition of a speciality occupation.

First, Fast Gear's contention that an engineering degree is required for the position appears to be inconsistent with the nature and location of Fast Gear's business.

11

Fast Gear's president described the business as a distributor/ supplier of its parent company's products as including "heavy-duty truck transmissions, various automotive gears and other related automotive parts/components."  The letter further explained that Fast Gear's parent company manufactures its truck and automotive parts in China according, at least in part, to "know-how" from Eaton Corporation and then ships those products to the United States for distribution by Fast Gear.  However, the work location identified for the offered position, however, is a residential address in Northville, Michigan.

Fast Gear's description of its relationship with its parent company is also inconsistent, which made it difficult for USCIS to determine the nature of Fast Gear's business and the need for someone with an engineering degree.  In the president's first letter, Fast Gear said it was established in 2001 to "guarantee timely delivery" of the parent company's products to U.S. customers.  In response to the first RFE, Fast Gear revised that sentence to state that it was established in 2001 to "guarantee [the parent company's] product quality.  In a second letter, the president stated that "our business requires us to transfer a Project Engineer to the US to provide customer service, quality control and technical support."  However, the duties of the offered "project engineer" position were described in general, abstract terms.  While Fast Gear  generally expanded its descriptions, it did not clarify the specific day-to-day duties that Li was to perform.

Moreover, while Fast Gear described the position as analyzing, inspecting, and testing the quality of mechanical elements of "heavy-duty truck transmissions, various automotive gears and other related automotive parts/components," it is difficult to see

how that is feasible at a residential location.  USCIS raised this issue in the second RFE.  In response, Fast Gear explained that as an automotive parts distribution company that "imports parts and specially manufactured components to US installers and manufacturing companies," it "facilities [sic] the manufacturing of specific parts and components for US customers.  This requires that Fast Gear employ individuals capable of identify [sic] quality parts and components for particular customers and special uses by using the latest engineering technology to analyze and test the parts and components for soundness and compatibility for particular uses before importing and distributing the product or component."  Fast Gear, however, did not, explain how Li would inspect and analyze the mechanical elements of products that have already been manufactured (and apparently inspected) in China, when the only work location provided is a residence.

Fast Gear also provided a "distribution document" showing that "palletized full containers" of automobile parts would be shipped weekly to plaintiff's distribution centers in four states: Indiana, North Carolina, Tennessee, and Iowa, and noting "[i]nventory management of up to 17 containers of on hand inventory at the peak level." This document however does not support Fast Gear's description of the duties of the offered position, e.g.,  inspecting, analyzing, and testing mechanical parts, as the petition specifically indicates that the beneficiary will not "be assigned to work at an off-site location for all or part of the period for which H-1B classification [is] sought." Fast Gear also did not provide any itinerary with the petition as is required if the beneficiary will perform services at more than one location. See 8 C.F.R. §214.2(h)(2)(i)(B).

13

2:14-cv-14487-AC-DRG   Doc # 18   Filed 07/20/15   Pg 14 of 18   Pg ID 315

Additionally, Fast Gear did not establish that a baccalaureate or higher degree is normally the minimum requirement for entry into the position. USCIS does not dispute that a bachelor's or higher degree is normally the requirement for a job in the engineering field. However, Fast Gear did not establish that actual day-to-day duties of the offered position or a proper business location to support its duties as described.

Fast Gear also did not show that the degree requirement is common to the industry in parallel positions among similar organizations or that the offered position is so complex or unique that it can be performed only by an individual with an engineering degree. When Fast Gear's president said that he has never heard of any "company who would hire an engineer without at least a BS degree," it appears that he was trying to satisfy this criteria. He also stated that every one of his project engineers possess at least a BS in Mechanical Engineering. These statements, however, are not enough to establish that a bachelor's degree of higher is the normal for the position at issue. For instance, Fast Gear did not establish that it had ever hired an engineer prior to this particular position.

Fast Gear also did not establish that it normally requires a degree or its equivalent for the offered position. First,, Fast Gear never showed that the offered position existed before offering it to Li. Second, Fast Gear advertised the position requirements as " minimum of B.S. with 2-5 years' experience in the area of auto transmission" This advertisement does not mention the need of someone with an engineering degree. Lastly, Fast Gear did not show that the nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a bachelor's or higher degree.

14

Finally, Fast Gear did not establish that the duties are so specialized or complex that they would require a bachelor's degree or higher in engineering. While there is no dispute that Li has obtained a degree equivalent to a degree from an accredited United States school he did not establish that the specialty occupation required a bachelor's degree or higher.

Overall, because of Fast Gear's failure to describe in concrete terms the day-to-day duties associated with the offered position, and the apparent discrepancies between the generalized description of job duties and nature and physical location of the its business, USCIS concluded that Fast Gear did not meet its burden of demonstrating that the offered job qualifies as a specialty occupation requiring an engineering degree under any of the applicable criteria. This conclusion was not unreasonable or an abuse of discretion.

### B. Whether Fast Gear Submitted a Valid LCA

USCIS also denied the petition because Fast Gear had not submitted a valid LCA. The LCA, Form ETA-9035, must list the locations where the non-immigrant will be employed, the wage rate and working conditions. USCIS explained it reasons for concluding that Fast Gear's LCA failed to meet these requirements as follows:

> In this case, you indicate that the work will be performed at your facility. However, your work location appears to be a residential and your tax documents also indicate your business activity as wholesale truck parts. You have not provided sufficient evidence to demonstrate that the projects or services provided by [Li], if any, will be performed at your facility as indicated in this petition.
> Without such evidence of works to be performed at the location states in the certified LCA, it is incumbent upon USCIS to verify whether you will comply with the terms and conditions of the submitted LCA. Nor can USCIS determined if the LCA is proper in relationship to the area of employment or the wage offered [Li]. Since a determination cannot be made as to the working conditions of [Li] as listed on the LCA, the LCA cannot be considered to be in compliance.

CAR at 7-8.

This conclusion is not unreasonable or arbitrary. Because as explained above, Fast Gear did not provide sufficient evidence that Li would be performing the duties of the position as it had been described, USCIS could not determine, as it is required to do, that Fast Gear would be in compliance with the LCA.

### C. Fast Gear's Arguments

Fast Gear appears to be focused on the theory that USCIS harbors a "hostile attitude" toward "legitimate United States employers such as Fast Gear who seek to hire professionals under the H-1B visa program. To the contrary, as fully explained in USCIS's response (Doc. 12), the number of H-1B visas is limited by statute and USCIS receives a high number of petitions for this type of visa. Thus, it is incumbent upon USCIS to carefully evaluate each visa petition to ensure that the offered position truly meets the requirements of the "specialty occupation" classification. USCIS fulfilled its role. Fast Gear's application simply did not meet the test.

USCIS did not deny the petition, as Fast Gear contends, on the basis that "this engineering position is not specialty occupation because of special circumstances such as the office is located in a residential area." (See Doc. 13 at p. 4) Rather, USCIS denied the petition because Fast Gear did not meet its burden of demonstrating that the offered position met the requirements for a specialty occupation. Additionally, given the information provided by Fast Gear, USCIS could not conclude that plaintiff would comply with the terms of the LCA. CAR at 2-8. USCIS did not attempt to reclassify the position as a non-engineering position because it had insufficient information to determine the actual duties of the offered position.

16

Moreover, Fast Gear's argument dismisses USCIS's concerns regarding the inspection of the imported parent company's products at a residential location, stating that "[t]here is no need to inspect the [imported] products which were already inspected [in China]."  (Doc. 13, p. 12).  However, during the application process, Fast Gear regard to the listed task of "[i]nteract[ing] with our US customers to identify their requirements, specifications and concerns," CAR at 61, Fast Gear now says that Li's interactions "with various customers all over the country" will take place "mainly through internet."  (Doc. 11 at p. 14).  Fast Gear also explains that "with advanced information technology, Engineers only need a computer to complete almost all of their work requirements," (Id. at p. 16).  As USCIS points out, Fast Gear does not acknowledge, however, that the technology that will allow Li to work from a residential location in Northville, Michigan, far from its customers, is also available in China.

Additionally, in its summary judgment papers, Fast Gear says for the first time that it filed its petition "primarily" because of the 12-hour time difference between the United States and China, which will require Li to interact (presumably by telephone) with United States customers in the middle of the night.  (Doc. 13, pp. 11, 14).  Fast Gear, however, did not mention the time difference to be of significance, even in response to requests for specific day-to-day duties associated with the position.  Moreover, this description is however contrary to Fast Gear's other assertion that Li's interactions "with various customers all over the country" will take place "mainly through internet."  (Doc. 11, p. 14).

Fast Gear also asserts for the first time that Li "may visit the customers or vice versa."  (Doc. 11, p. 16).  Again, "travel to meet with various customers at their locations

across the United States to understand specific problems with product quality" was not listed with the petition as one of the detailed tasks associated with the offered position.

To the extent Fast Gear says that USCIS should have inferred those details from the general objective of "interacting with our US customers," this argument misses the mark.  It was Fast Gear's burden, not USCIS, to show that the offered position qualifies as a specialty occupation.

## VI.  Conclusion

For the reasons set forth above, USCIS's decision to deny Fast Gear's application was not arbitrary or capricious based on the record.  USCIS's motion is GRANTED.  Fast Gear's motion is DENIED.  This case is DISMISSED.

SO ORDERED.

<u>S/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: July 20, 2015
       Detroit, Michigan